UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**MICHAEL E. HOLLEY, JR.,**

       **Plaintiff,**

 vs.               9:22-CV-1119
                  (MAD/TWD)

**K. GILMORE,** *Lieutenant, UCF-RRU*; **J. SPINNER,**
*Sergeant, UCF-RRU*; **A. MENARD,** *Correctional*
*Officer, UCF-RRU*; **N.C. TATRO,** *Correctional*
*Officer, UCF-RRU*; **K. MARSTON,** *Correctional*
*Officer, UCF-RRU*; **and M. ASHLEY,** *Correctional*
*Officer, UCF-RRU*,

       **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **NIXON, PEABODY LAW FIRM**<br>677 Broadway<br>10th Floor<br>Albany, New York 12207<br>Attorneys for Plaintiff | **DANIEL J. HURTEAU, ESQ.**<br>**CHRISTOPHER J. STEVENS, ESQ.** |
| **OFFICE OF THE NEW YORK**<br>**STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendants | **OLIVIA R. COX, AAG** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  Plaintiff, an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action on October 28, 2022, pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. By Decision and Order issued on December 5, 2022, this Court found that the following claims survived initial review: (1) Eighth Amendment

excessive force and failure to intervene claims against Defendants Spinner, Menard, Marston, Ashley, and Tatro; (2) Eighth Amendment deliberate medical indifference claims against Defendants Gilmore and Spinner; and (3) Fourteenth Amendment Equal Protection claims against Defendants Gilmore, Spinner, and Tatro. *See* Dkt. No. 4.

Currently before the Court is Defendants' partial motion for summary judgment. *See* Dkt. No. 51.

## II. BACKGROUND

Plaintiff was incarcerated at Upstate C.F. on June 20, 2022, and Plaintiff's claims in this action are premised on two separate alleged incidents that occurred on that date. *See* Dkt. No. 1. Defendants' current motion deals exclusively with the first incident, which occurred at approximately 9:18 a.m. and involved Defendants Tatro, Spinner, and Gilmore. Plaintiff claims that Defendant Tatro used excessive force on him and called him racial slurs. *See id.* at ¶¶ 17-19, 23. As for Defendants Spinner and Gilmore, Plaintiff alleges that they failed to provide him with mental health care when he requested it and called him racial slurs. *See id.* at ¶¶ 20-22.

Incarcerated individuals who have been determined to require more than fifteen days of disciplinary confinement pursuant to DOCCS proceedings are kept in the Residential Rehabilitation Unit ("RRU"). *See* Dkt. No. 60-5 at ¶ 19. Plaintiff was housed in the RRU on June 20, 2022. *See* Dkt. No. 51-13 at ¶ 9.

At approximately 9:18 a.m., on June 20, 2022, Defendant Tatro and two non-party correctional officers (Officers Mainville and Burwell) reported to Plaintiff's cell to escort him to his RRU programming. *See* Dkt. No. 60-5 at ¶ 25. Plaintiff placed his hands through the cell hatch and mechanical restraints connected to a waist chain were applied to him. *See id.* at ¶ 26.

2

Plaintiff then exited his cell without incident for a pat frisk prior to the program run. *See id.* at ¶ 27.

Non-party Officer Mainville executed the pat frisk while Defendant Tatro maintained control of the waist chain using two hands. *See id.* at ¶ 28. Upon completing Plaintiff's pat frisk, Officer Mainville noticed that Plaintiff was not wearing state-issued socks, as required by facility policy. *See id.* at ¶ 29.[1] Officer Mainville then instructed Plaintiff to return to his cell and put on his state-issued socks. *See id.* at ¶ 30. Plaintiff complied and returned to his cell and Officer Burwell closed the door. *See id.* at ¶ 31.

At this point, the parties largely disagree on what transpired. Defendants claim that, using both hands, Defendant Tatro maintained control of the waist chain which was being fed through the hatch to the outside of the door where he was positioned. *See* Dkt. No. 51-16 at ¶ 32. Defendants claim that at no time while Plaintiff was returning to his cell did Defendant Tatro use a racial slur against him. *See id.* at ¶ 33. Further, Defendants contend that while returning to his cell, Plaintiff became argumentative. *See id.* at ¶ 34. Once inside the cell, Defendants claim that Officer Mainville gave Plaintiff a direct order to put his hands out of the hatch so that the mechanical restraints could be removed. *See id.* at ¶ 35. Plaintiff refused and attempted to pull the restrains and waist chain into the cell and down to the floor. *See id.* at ¶ 36. At this time, Defendants contend that force became necessary to gain compliance and recover the mechanical restraints because Plaintiff's retention of the restraints would have posed an extreme risk of danger to himself, other officers, and other incarcerated individuals. *See id.* at ¶ 37. As such, Defendant

---

[1] The Court notes that Plaintiff disputes the fact that state-issued socks were required. *See* Dkt. No. 60-5 at ¶ 29. This dispute, and others relating to the facts leading up to the underlying incident, are not material to this Court's decision and are provided solely for background purposes.

3

Tatro applied rearward pressure on the waist chain attached to the mechanical restraints to get Plaintiff's hands out of the hatch so his mechanical restraints could be removed. *See id.* at ¶ 38. Defendant Tatro leveraged his body weight by putting his foot on the cell door and applying rearward pressure on the waist chain. *See id.* at ¶ 39. Once Plaintiff's hands were out of the hatch, Defendant Tatro was able to return both feet to the floor while maintaining rearward pressure on the waste chain so Officers Mainville and Burwell could remove the mechanical restraints. *See id.* at ¶ 40. Once the mechanical restraints were recovered, all force ended. *See id.* at ¶ 41.

According to Plaintiff, once he entered his cell, Defendant Tatro "forcefully pulled on the chains connected to the cuffs around [Plaintiff's] wrist, stating 'Boy I'll rip these shits right off your f***ing wrists,' and causing [Plaintiff] to hit his face against the gate which injured his lip and caused bruising on his arm." Dkt. No. 60-5 at ¶ 32. Further, Plaintiff contends that while this was transpiring, Defendant Tatro used racial slurs. *See id.* at ¶ 33. Moreover, Plaintiff asserts that he was compliant throughout this incident and that the use of force was entirely unnecessary. *See id.* at ¶ 37.

Following this incident, Nurse Conklin reported to Plaintiff's cell to assess and treat his injuries. While Plaintiff contends that he informed the moving Defendants that he was suicidal immediately following this incident, the moving Defendants deny being so informed. *See id.* at ¶¶ 47-49.[2]

---

[2] At approximately 11:17 a.m., on June 20, 2022, Plaintiff was involved in another use-of-force incident in his cell. *See* Dkt. No. 51-8 at 8. According to the complaint, Defendants Spinner, Menard, Marston, Ashley, and Tatro, among other things, assaulted Plaintiff in his cell as Plaintiff laid completely still in his bed. *See* Dkt. No. 1 at 4. That incident is not subject to the pending motion for partial summary judgment.

In their motion for partial summary judgment, Defendants contend that the claims relating to the first incident on June 20, 2022, are subject to dismissal because Plaintiff failed to exhaust administrative remedies as to those claims and, alternatively, that they fail on the merits.

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

5

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted).  "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252 (emphasis and alterations in original)).  "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

**B.     Exhaustion of Administrative Remedies**

In their motion, Defendants contend that Plaintiff's excessive force claim against Defendant Tatro and his Equal Protection claim against Defendants Tatro, Spinner, and Gilmore, as they relate to the first incident, must be dismissed because Plaintiff failed to exhaust his administrative remedies.  *See* Dkt. No. 51-7 at 11-13.  In response, Plaintiff argues that his reference to the first incident in his grievance primarily regarding the 11:17 a.m. incident was sufficient to exhaust his administrative remedies.  *See* Dkt. No. 60 at 11-13.

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation

6

omitted). Exhaustion in prisoner cases covered by Section 1997e(a) is mandatory. *Id.* at 524; *see also Ross v. Blake*, 578 U.S. 632, 638 (2016) (stating that the mandatory language of Section 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, Section 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *See Toussaint v. Rumsey*, No. 9:23-cv-974, 2024 WL 3649918, *3 (N.D.N.Y. June 5, 2024) (citation omitted).

In New York, the administrative remedies consist of a three-step Incarcerated Grievance Program ("IGP"). First, a grievance is submitted to the Incarcerated Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of an alleged occurrence." *Id.* at § 701.5(a)(1). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *See id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *See id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision.[3] *See id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *See id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *See*

---

[3] Grievances alleging harassment are submitted directly to the superintendent, rather than the IGRC, and the superintendent must render a decision within twenty-five (25) calendar days. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.8(f). DOCCS Directive 4040 provides that, if the superintendent fails to render a decision within this time limit, the grievant may then appeal his grievance directly to the CORC. *See id.* at § 701.8(g).

*Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter*, 534 U.S. at 524).

"A plaintiff must exhaust his administrative remedies before filing his initial complaint in federal court." *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 582 (S.D.N.Y. 2015); *see also Barrett v. Ballard*, No. 9:23-cv-113, 2024 WL 4627511, *3 (N.D.N.Y. Oct. 4, 2024) (citations omitted). "'When a prisoner does not properly exhaust his administrative remedies before filing suit, the action must be dismissed.'" *Barrett*, 2024 WL 4627511, at *3 (quotation omitted). "'[W]here a plaintiff's grievance has not been appealed to and decided by the highest body in the administrative process, the plaintiff cannot be said to have exhausted his administrative remedies and his claims are thus properly dismissed by a court.'" *Id.* (quotation omitted).

In the present matter, the Court agrees with Defendants and finds that Plaintiff failed to exhaust his administrative remedies as to the first incident on June 20, 2022. Here, there are two grievances that are relevant to the pending motion. On June 21, 2022, Plaintiff submitted grievance UST-1002-22, which provides in relevant part as follows:

> Yesterday at approx. 11:17 am June 20, 2022 I was gang assaulted by several C.O.'s under the direction of Sgt. J. Spinner & Lt. K. Gilmore. Earlier prior to said incident taking place I notified both aforementioned supervisors of my concern for my mental health & that I was feeling homicidal/suicidal to which they both ignored. Hours later a security round was conducted & my window was covered & I was unresponsive due to a mental breakdown I was going through. I was lying in my bed with my sheet covering my face when my cell door was opened & several staff rushed into my cell and while still in my bed I was hit in the face with a cell shield a couple times before I began to get punched in the face by several C.O.'s. I was then placed in a chokehold and lifted out of my bed and slammed head first into the floor where the assault continued at which time I was punched in my face & head several times. My nose was clutched & squeezed & mouth covered while pulling my head back constricting my breathing, then my head was punched back into the floor & I was kneed in my head while they had knees on my back legs and arms, then my face was grasped again as my

>left eye was gouged for several seconds.  Then I was punched several more times.  I was cuffed, brought to my feet before being punched a few more times & brought out onto the gallery when on camera my head was banged against the wall.

Dkt. No. 51-8 at 8.

On July 18, 2022, Plaintiff submitted a second grievance (UST-1214-22), which was titled "Retaliation/Untimely Inv." Dkt. No. 51-9 at 4.  In this grievance, Plaintiff complains about the lack of a timely response to grievance UST-1002-22, and further states as follows:

>I would like for the record to document that another direct violation of my rights is being committed through this process & by staff here at this facility in a blatant attempt to justify an unprovoked & unreasonable use of force against me.  Another violation took place as C.O. Tatro was present & actively involved in two consecutive [use of force] incidents (U.O.F. 22-0157 & 22-0158).  C.O. Tatro & coworkers retaliated after initial incident & falsified M.B.R.s & medical report to try & cover up their malicious acts & approved by Sgt. J. Spinner.

*Id.*

As Defendants correctly contend, the first grievance, which was titled "Assaulted by Officers," is clearly a grievance complaining about Defendants' actions relating to the 11:17 a.m. incident.  In that grievance, Plaintiff provides significant details about the 11:17 a.m. incident and only mentions an earlier incident in passing.  Specifically, grievance UST-1002-22 states in pertinent part as follows: "Earlier prior to [the 11:17 a.m. incident] taking place I notified both aforementioned supervisors of my concern for my mental health & that I was feeling homicidal/suicidal to which they both ignored." Dkt. No. 51-8 at 8.  This passing reference to an earlier incident is silent as to any allegations relative to excessive force or Equal Protection violations (*i.e.*, the use of racial slurs) – the two claims that are subject to Defendants' exhaustion argument.

9

Similarly, grievance UST-1214-22, which was submitted on July 18, 2022, and titled "Retaliation/Untimely Inv.," fails to place Defendants on notice that Plaintiff was seeking to grieve the alleged excessive force and Equal Protection violation relating to the first incident on June 20, 2022. Again, this grievance only references the first incident in the most conclusory of terms and, instead, primarily details the alleged violations that occurred during the 11:17 a.m. incident and thereafter. *See* Dkt. No. 51-9 at 4. This passing reference to an earlier incident is insufficient to place prison officials on notice that Plaintiff was seeking to file a grievance relating to alleged excessive force and an Equal Protection violation relating to the first incident. *See Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (holding that grievances submitted by incarcerated individuals "may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally"). It is well established that it is the grievant's responsibility to detail each incident he wishes to grieve with sufficient particularity to allow for an investigation to take place. *See Wright v. Potter*, No. 9:14-cv-1041, 2016 WL 5219997, *5-6 (N.D.N.Y. June 28, 2016). Plaintiff could have grieved both incidents in the one grievance that he submitted, but he did not. While Defendants' responsive records may indicate that the two incidents are related, the onus falls on Plaintiff to ensure that he properly grieved the claims at issue, which he has failed to do.

This result is further supported by Plaintiff's own testimony. In his deposition on February 2, 2024, Plaintiff testified that he never filed a grievance regarding the 9:18 a.m. use-of-force incident. Specifically, Plaintiff testified as follows:

> Q. Now, did you ever file a grievance related to the nine eighteen a.m. incident?
>
> A. I'm not for sure if I did. I don't believe so.

> Q. Thank you. So just to be clear, you filed no grievance about that first use-of-force incident on June 20, 2022, at nine eighteen a.m.?
>
> A. No, I didn't. I – I don't believe I did.
>
> Q. So you did not exhaust any administrative remedies as to that nine eighteen a.m. incident?
>
> A. That wasn't a part of this. No, it was not.

Dkt. No. 51-2 at 108. This testimony further supports the Court's conclusion.

"The PLRA's exhaustion requirement is designed to 'afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Porter*, 534 U.S. at 524-25). "As such, it is not dissimilar to the rules of notice pleading, which prescribe that a complaint 'must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it.'" *Id.* (quotation omitted). "Thus, ... if prison regulations do not prescribe any particular content for inmate grievances, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.'" *Id.* (quotation omitted).

Plaintiff's grievances in this matter failed to place prison officials on notice that he was seeking redress for the alleged excessive force and Equal Protection violations relating to the first incident. Accordingly, the Court grants this aspect of Defendants' motion for partial summary judgment.

**C.    Deliberate Medical Indifference**

Defendants contend that Plaintiff's Eighth Amendment deliberate medical indifference claims against Defendants Spinner and Gilmore must be dismissed because Plaintiff has failed to

11

establish either the objective or subjective element for such a claim. *See* Dkt. No. 51-17 at 13-19. Plaintiff, however, contends that he informed Defendants Spinner and Gilmore that he was suicidal immediately following the first incident on June 20, 2022, and that they failed to ensure that he was provided with adequate medical care.

The Eighth Amendment forbids "'deliberate indifference to serious medical needs of prisoners,' ... which includes needs for mental health care." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "Non-medical personnel may be held liable for deliberate indifference to medical needs where a plaintiff demonstrates that the prison personnel intentionally denied or delayed access to medical care or intentionally interfered with medical care once it was prescribed." *Baptiste v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:22-cv-1326, 2023 WL 2868763, *2 (N.D.N.Y. Apr. 10, 2023) (citations omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (noting that deliberate indifference may be manifested when prison guards intentionally deny or delay access to medical care). A medical indifference claim has two necessary components, one objective and the other subjective. *See Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

### 1. Objective Component

Under the objective prong of a deliberate indifference claim, the alleged inadequacy in medical care must be "sufficiently serious." *Farmer*, 511 U.S. at 844; *see also Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Meaning that the alleged inadequacy in care constitutes "'a condition of urgency . . . that may produce death, degeneration, or extreme pain[.]'" *Hill v.*

12

*Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quotation omitted); *see also Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (quotation omitted); *see also Bradley v. Rell*, 703 F. Supp. 2d 109, 121 (N.D.N.Y. 2010).

The objective prong – whether the alleged inadequacy in medical care is "sufficiently serious" – consists of two separate inquiries. *See Jordan v. Fischer*, 773 F. Supp. 2d 255, 274 (N.D.N.Y. 2011). First, the court will look at whether the plaintiff was "actually deprived of adequate medical care." *Id.* (citing *Salahuddin*, 467 F.3d at 279). Prison officials who act "reasonably" in response to an inmate's health risk cannot be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Salahuddin*, 467 F.3d at 279-80 (citing *Farmer*, 511 U.S. at 844-47).

The second inquiry under the objective prong is whether the purported inadequacy in medical care is "sufficiently serious." *Salahuddin*, 467 F.3d at 280. "Factors that should be considered in assessing whether a medical need is sufficiently serious include: '(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Little v. Soulia*, No. 9:19-cv-263, 2021 WL 4524220, *12 (N.D.N.Y. June 16, 2021) (quoting *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)).

In the present matter, the undisputed facts establish that, following the first use-of-force incident, Defendants Spinner and Gilmore arrived at Plaintiff's cell at approximately 9:22 a.m. in response to a radio call requesting assistance. *See* Dkt. No. 51-13 at ¶ 17; Dkt. No. 51-10 at ¶ 4; Dkt. No. 51-12 at ¶ 4; Dkt. No. 51-2 at 40:2-12. By the time Defendants Spinner and Gilmore arrived, the use-of-force incident at ended. *See id.* Defendant Gilmore requested that Plaintiff "calm down" and "relax." Dkt. No. 51-12 at ¶ 8; Dkt. No. 51-2 at 42:20-25. During his deposition, Plaintiff testified that he informed Defendants Spinner and Gilmore that he was suicidal, and that they responded by laughing at him and walking away from his cell. *See* Dkt. No. 51-2 at 48:23-49:20. Regardless of whether Defendants Spinner and Gilmore were dismissive of Plaintiff's claim that he was suicidal, the undisputed facts establish that they called for Nurse Conklin to report to Plaintiff's cell and that she arrived at the cell at 9:30 a.m. for a medical examination. *See* Dkt. No. 51-10 at ¶ 11; Dkt. No. 51-12 at ¶ 8. When Nurse Conklin arrived at Plaintiff's cell, Plaintiff complained of pain in his right wrist. *See* Dkt. No. 52-3 at 2-4; Dkt. No. 51-2 at 45:20-24. Nurse Conklin noted slight swelling to Plaintiff's right wrist and no other injuries. *See* Dkt. No. 52-3 at 2-4; Dkt. No. 52-2 at ¶ 7. Nurse Conklin made no note that Plaintiff ever mentioned feeling suicidal. *See* Dkt. No. 52-2 at ¶ 8; Dkt. No. 51-2 at 49:25-50:5.

In the days and weeks following the June 20, 2022, use-of-force incidents, Plaintiff made a number of requests for sick calls for lingering physical pain. *See* Dkt. No. 52-1. None of those sick calls were requested for a mental health issue. *See id.* Plaintiff's medical records show that Plaintiff was seen by medical staff at the facility three times on June 20, 2022; was attempted to be seen and was successfully seen once on June 21, 2022; and was seen once on June 22, 2022. *See id.* Further, following sick call requests submitted wherein Plaintiff mentions various physical ailments caused by the alleged assault(s), he was attempted to be seen on June 27, 2022;

and was successfully seen on June 30, 2022, July 3, 2022, July 5, 2022, and July 6, 2022. *See id.* Nowhere in any of these visit notes or the many sick call slips written by Plaintiff is there a mention that Plaintiff was seeking mental health care. *See id.* As such, Plaintiff's conclusory assertion that he was suicidal and sought mental health treatment is insufficient to create a question of fact regarding whether Plaintiff had a sufficiently serious medical issue to support this claim. *See Adams v. Rock*, No. 9:12-cv-1400, 2015 WL 1312738, *9 n.8 (N.D.N.Y. Mar. 24, 2015) (citing cases holding that the plaintiff's conclusory assertion that he was denied medical care is insufficient to defeat summary judgment where the defendants present sworn declarations and medical records that directly contradict this claim).

Alternatively, assuming that Plaintiff did, in fact, inform Defendants Spinner and Gilmore that he was feeling suicidal, the undisputed evidence demonstrates that these Defendants called Nurse Conklin, who immediately proceeded to his cell and provided medical care. As such, the undisputed facts establish that Defendants Spinner and Gilmore (as non-medical professionals) acted reasonably in response to Plaintiff's health risk. *See Salahuddin*, 467 F.3d at 279-80. Moreover, nothing in the record suggests that Defendants Spinner and Gilmore's conduct in any way exacerbated his injuries. *See Fraser v. Hallmark*, No. 24-cv-63, 2024 WL 812164, *4 (D. Conn. Feb. 27, 2024).

Accordingly, the Court finds that Plaintiff has failed to establish a question of fact as to the objective component of the deliberate indifference test; and, therefore, Defendants are entitled to summary judgment as to this claim.

### 2. Subjective Component

To satisfy the subjective component of medical indifference, the plaintiff set forth sufficient evidence to support a finding that the defendant knew of and disregarded an excessive

risk to the inmate's health or safety. The defendant must both be aware of a fact from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 2006).

Generally, the subjective component of the deliberate indifference analysis requires that the "charged official must [have] act[ed] with a sufficiently culpable state of mind." *Id.* "To meet the subjective element, a prison official need not expressly intend to inflict pain, but a plaintiff must establish that the official acted in a manner equaling criminal recklessness." *Alston v. Bendheim*, 672 F. Supp. 2d 378, 385 (S.D.N.Y. 2009) (citing *Farmer*, 511 U.S. at 837).

The plaintiff must demonstrate that the defendant "'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety[.]'" *Chance*, 143 F.3d at 702 (quoting *Farmer*, 511 U.S. at 837). "[A] prison official does not act in a deliberately indifferent manner unless that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exist, and he must also draw the inference." *Hathaway*, 37 F.3d at 66.

However, as to "non-medical prison personnel," the plaintiff must demonstrate that the defendants "'intentionally delayed access to medical care when the [plaintiff] was in extreme pain and ha[d] made his medical problem known to the attendant prison personnel.'" *Hall v. Corr. Officer Nikols*, No. 9:21-CV-502, 2021 WL 2457638, at *5 (N.D.N.Y. June 16, 2021) (quotation and other citations omitted); *see also Estelle*, 429 U.S. at 104-05. "Non-medical personnel may be held liable for deliberate indifference to medical needs where a plaintiff demonstrates that the prison personnel intentionally denied or delayed access to medical care or intentionally interfered with medical care once it was prescribed." *Baptiste*, 2023 WL 2868763, at *2 (citations omitted); *see also Banks v. No. 8932 Corr. Officer*, No. 11-CV-8359, 2013 WL 673883, *4 (S.D.N.Y. Feb.

16

25, 2013) ("A prison guard's deliberate indifference to a serious medical need of a prisoner means intentionally denying or delaying access to medical care or intentionally interfering with medical treatment once it was prescribed").

In the present matter, Plaintiff's medical deliberate indifference claims against Defendants Spinner and Gilmore are alternatively subject to dismissal because he has failed to establish the subjective prong. As set forth in more detail above, although Plaintiff claims that Defendants Spinner and Gilmore were dismissive of his alleged claim that he was suicidal, the undisputed evidence establishes that Defendants Spinner and Gilmore immediately called for Nurse Conklin to report to Plaintiff's cell to provide him with medical care. As such, regardless of any statements they may have made, the undisputed facts establish that they did not deny or delay Plaintiff's access to medical care. *See Baptiste*, 2023 WL 2868763, at *2. Further, Plaintiff never mentioned his alleged suicidal ideation in any of his sick call requests. Likewise, each time Plaintiff was either seen by medical staff, or they attempted to see him and he rejected their help, the treatment notes do no indicate that Plaintiff complained of thoughts of suicide. Thus, Defendants Spinner and Gilmore could not have drawn an inference that there was a substantial risk of serious harm to Plaintiff's health.

Accordingly, the Court grants this aspect of Defendants' motion for partial summary judgment on this alternative ground.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Defendants' motion for partial summary judgment (Dkt. No. 51) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 22, 2025
       Albany, New York

*Mae A. D'Agostino*
U.S. District Judge